## MORSE v. PENNSYLVANIA R. CO.
### No. 206.

Circuit Court of Appeals, Second Circuit.
Jan. 21, 1935.

Diven & Diven, of Elmira, N. Y., for appellant.

Lusk, Buck, Ames & Folmer, of Cortland, N. Y., for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff Morse brought this action against the defendant railroad company to

recover damages for personal injuries under the Federal Employer's Liability Act (45 USCA § 51 et seq.). He was a signal maintainer in the defendant's employ, who was in charge of repairs of electrical apparatus of the latter, and, in order to do his work went from place to place along the tracks of the railroad in a two-cylinder gasoline motor car, belonging to the defendant, which he operated himself.

On September 17, 1932, Morse had been making repairs in the northern section of his territory and was returning in the motor car to Penn Yan, N. Y., where the car was kept. To reach the latter place he had to pass over a grade crossing where the accident occurred. At the crossing the railroad tracks ran north and south, while the highway ran east and west. The road to the west. of the crossing rose in a steep grade and, where it crossed the tracks, was constructed of fine cinders that came up to the level of the rails.

The plaintiff testified that as he approached the highway from the north he blew a small whistle which he had and stopped his motor track car about 4 or 5 feet from the crossing. He said that he came as close. to the crossing as he did because, at a greater distance, he could not get a good view up the highway to the west on account of the weeds and brush that grew along its sides. At the place where he stopped, he could see up the highway to the west for a distance of about 150 feet and within that range of vision it was clear of traffic. After first looking to see whether there were any stones in the flangeways of the rails, he shifted his motor into low and started to, cross through the cinders until his rear wheels got in the opposite wheel track, when the cinders suddenly stalled his motor and his car stopped.

At about this time he saw a model T Ford coupé, driven by one Carl Jensen, approaching the crossing from the west and only about two car lengths away. The right front corner of the automobile collided with the rear right-hand corner of the track car. As the two vehicles struck, the plaintiff jumped from his track car fearing that it would tip over on top of·him and, in so doing, broke his left leg. He testified that, if his car had kept on going and had not stalled, the automobile, proceeding as it did, would not have collided with the track car because the latter would have been over the crossing before the automobile reached it.

Jensen testified that as he came down the hill toward the crossing he looked to see if there were any trains coming and slowed down to six, seven, or eight miles an hour; that he first observed the track car when about 16 feet away, right in the middle of the crossing, and that it came to a stop at a point over the south wheel track. When Jensen first saw the track car only 16 feet away he applied his brakes; he then gave his automobile "a little push" and started turning it to the left so as to pass to the rear, but the stalling of the track car prevented him from carrying out his purpose and the collision ensued.

The foregoing version presented by plaintiff and his witnesses was contradicted in important respects by defendant's witnesses, but assuming, as we must, that it represented the true account of the accident, we can find no ground for holding the defendant liable.

The condition of the crossing and the likelihood that the loose cinders would cause the track car to stall were not, in our opinion, causes contributing to the accident in any legal sense. If the plaintiff's track car stalled on account of the loose cinders at the crossing, he was, for the time being, helpless and unable to extricate himself from a dangerous situation. Jensen, on the other hand, could, up to the last moment, have avoided a collision by the exercise of proper care. He had no right to approach the crossing at such a rate of speed that he could not stop before colliding with any car that might be lawfully on the railroad, nor had he the right to rely on the supposition that the track car would keep its speed so that he would be able to avoid it. It was his duty to have his own car under such control that the track car would certainly be off the crossing before his automobile came on it.

By the plaintiff's own story, when he stopped 4 or 5 feet north of the crossing, he could see up the highway about 150 feet, and he saw nothing coming. If plaintiff's account be correct, Jensen should have noticed the track car long before he came as near to it as 16 feet. Indeed, the estimate of 16 feet is so unlikely as to be practically incredible.

But whatever may have been the distance within which Jensen first saw the track car, he evidently did not try to come to a full stop before he reached the railroad. Only in that way could he certainly avoid a collision. On the contrary, Jensen trusted that the plaintiff would keep his speed and would thus pass out of the way of the Ford. While it may not be uncommon for automobiles to take chances at railroad crossings, that very habit is the occasion of many quite unnecessary

disasters. We cannot sanction the theory that an automobile may approach a railroad crossing on which a car is moving in reliance upon the belief that the car will not stop, but will maintain such a rate of speed as to be off the crossing before the automobile reaches it.

Jensen not only should have seen the track car long before he did, but should have had such control over his automobile, even when so short a distance away from the track car as 16 feet, that he could avoid a collision. We can see nothing that prevented him from exercising such control, even up to the last moment, and we hold that his negligence in running the Ford coupé into the plaintiff's car was the proximate cause of the latter's injuries. Instead of waiting for the track car to get beyond and to the south of the highway, Jensen relied on passing over the rails the moment the track car would naturally, in view of apparent probabilities, have got beyond the crossing. He would have been fully as justified in taking his chances if the plaintiff had deliberately stopped the track car at the crossing in order to do some work there as he was when it suddenly became stalled. The stopping of a car on a railroad track, whether voluntary or involuntary, cannot be regarded as an act of negligence.

Any defect in the crossing, due to the presence of too large a mass of fine cinders or to the failure to clean out the flangeways so that they would not become clogged and endanger traffic, we regard as a condition rather than a cause of the accident.

Judgment reversed.